UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN J. MITCHELL,                           Case No. 13-11138

　　　　　　　　Plaintiff,                    Arthur J. Tarnow
v.                                           United States District Judge

COMMISSIONER OF SOCIAL SECURITY,             Michael Hluchaniuk
                                             United States Magistrate Judge

　　　　　　　　Defendant.
_____/

**REPORT AND RECOMMENDATION
CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 16, 20)**

**I.    PROCEDURAL HISTORY**

　　　A.    Proceedings in this Court

　　On March 14, 2013, plaintiff filed the instant suit seeking judicial review of

the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant

to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Arthur J.

Tarnow referred this matter to the undersigned for the purpose of reviewing the

Commissioner's decision denying plaintiff's claims for a period of disability,

disability insurance benefits, and supplemental security income.  (Dkt. 3).  This

matter is before the Court on cross-motions for summary judgment.  (Dkt. 16, 20).

Plaintiff also filed a reply in support of his motion for summary judgment.  (Dkt.

21).

B.     Administrative Proceedings

Plaintiff filed the instant claims on May 24, 2010 and May 27, 2010,

alleging that he became disabled beginning April 30, 2010.  (Dkt. 9-2, Pg ID 45).

The claims were denied on reconsideration by the Commissioner on December 30,

2010.  (Dkt. 9-2, Pg ID 45).  Plaintiff requested a hearing and on September 15,

2011, plaintiff appeared with a representative before Administrative Law Judge

(ALJ) Jessica Inouye, who considered the case de novo.  In a decision dated

September 23, 2011, the ALJ found that plaintiff was not disabled.  (Dkt. 9-2, Pg

ID 45-56).  Plaintiff requested a review of this decision.  The ALJ's decision

became the final decision of the Commissioner when, after the review of

additional exhibits,[1] the Appeals Council, on February 8, 2013, denied plaintiff's

request for review.  (Dkt. 9-2, Pg ID 30-36); *Wilson v. Comm'r of Soc. Sec.*, 378

F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **GRANTED** in part and **DENIED** in

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a
request to review the ALJ's decision, since it has been held that the record is closed at the
administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not
part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th
Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since
district court review of the administrative record is limited to the ALJ's decision, which is the
final decision of the Commissioner, the court can consider only that evidence presented to the
ALJ. In other words, Appeals Council evidence may not be considered for the purpose of
substantial evidence review.

part, that defendant's motion for summary judgment be **GRANTED** in part and **DENIED** in part, and that the findings of the Commissioner be **REVERSED** in part and **AFFIRMED** in part, and that this matter be **REMANDED** for further proceedings.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff was 37 years old on the alleged onset date.  Plaintiff has past relevant work as a material handler, housekeeper, and painter.  (Dkt. 9-2, Pg ID 55).  The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date.  (Dkt. 9-2, Pg ID 47).  At step two, the ALJ found that through the date last insured, plaintiff had the following severe impairments: obesity, left amputated index finger, arthritis of the left knee, back pain, and bipolar disorder.  (Dkt. 9-2, Pg ID 47).  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  (Dkt. 9-2, Pg ID 48).  The ALJ concluded that plaintiff has the following residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can perform non production pace work that is simple,

unskilled with an SVP level 1 or 2. He should not work
in close proximity to co-workers (not function as a
member of a team and no direct contact with the public).
He can perform work within the light exertion range and
occasionally push/pull with left upper extremity and left
lower extremity. The claimant can perform gross and
fine manipulation with the left upper extremity on a
frequent basis, but should avoid concentrated exposure
to unprotected heights, moving machinery, vibrations,
extreme cold, wetness and humidity. He can occasionally
perform postural activities, occasionally climb ramps,
stairs, balance, stoop, crouch or kneel, but no crawling,
or climbing ladders, ropes, and scaffolds. The claimant
requires the sit/stand option (he can sit or stand at will).
He can stand or walk (with normal breaks) at least 15
minutes at a time for a total of 4 hours in an 8-hour day.
He can sit up to 40 minutes at a time (with normal
breaks), for 6 hours in an 8-hour day.

(Dkt. 9-2, Pg ID 50).

At step four, the ALJ found that plaintiff could not perform his past relevant

work.  (Dkt. 9-2, Pg ID 55).  At step five, the ALJ concluded that there were a

significant number of jobs in the national economy that plaintiff could perform,

given his RFC.  Based on the foregoing, the ALJ concluded that plaintiff was not

under a disability from the claimed onset date through the date of the decision.

(Dkt. 9-2, Pg ID 55-56).

    B.    <u>Plaintiff's Claims of Error</u>

Plaintiff first argues that the ALJ did not articulate adequate evidentiary

support for the RFC as required by SSR 96-8p.  In the present case, the decision

found at step two that plaintiff had the following severe impairments: obesity; left index amputated finger; arthritis of the left knee; back pain; and bipolar disorder. (Tr. 18).  However, plaintiff contends that the discussion failed to engage in a complete discussion of the records documenting all of plaintiff's impairments, including his poor ability to relate and interact with others, his aggressive nature, and his difficulties related to his amputated index finger.  Many of those records noting all of these impairments with the associated severe symptoms and observations were significantly discounted in terms of weight in the decision. Plaintiff acknowledges that the ALJ is not required to discuss at great length every single piece of evidence present in the file, but asserts that the decision offered only brief explanations, and sometimes inaccurately, as to why this evidence was being discounted and/or discredited, calls into question the overall evidentiary analysis and whether the evidence in the record actually provides support for the RFC.

According to plaintiff, the decision significantly truncated the discussion of plaintiff's mental health condition evidence.  While the decision noted a diagnosis of bipolar disorder, it found that "the claimant's symptoms were not as severe as alleged."  (Tr. 22).  Plaintiff contends that this assertion failed to acknowledge the full picture of plaintiff's mental health condition.  For example, Dr. Jeffrey A. Territo, D.O. noted that "I am very worried about both the patient's health as well

as my staff's health in terms of this patient becoming violent," and "I would worry that this gentleman would hurt other people as well as possibly hurt himself so we are going to recommend hospitalization at this time." (Tr. 403- 404). Plaintiff also contends that the evidence the ALJ did cite does not support the decision's assertions. For example, the ALJ stated that "[o]n May 19, 2009, the claimant signed a request for discharge, was not committable and was no longer in need of acute psychiatric hospitalization." (Tr. 22). Yet the decision lacks any mention of the fact that this was after plaintiff had already been in inpatient hospital care for a period of five days. (Tr. 347-349). Additional records also reveal that plaintiff has a documented history of more than a year of poor impulse control and anger issues since at least March 2009 (Tr. 248), as plaintiff was fired from a job for engaging in a verbal altercation with a supervisory employee. (Tr. 66-67, 232, 274).

Plaintiff also points to several other records that support the diagnoses of bipolar I disorder with rapidly cycling manic and depressive phases and antisocial personality disorder. (Tr. 359, 387, 400, 402, 408). Like the other records cited, plaintiff contends that this evidence was only briefly mentioned and was not given adequate discussion in decision. Further, plaintiff was admitted to Saginaw Meadows on 5/30/11 (Tr. 412, 331), before entering therapy at Crossroads on 6/21/11. (Tr. 400, 401). In fact, while receiving therapy at Crossroads, Dr. Harold

B. Lenhart reported on 7/19/2011 that, while on Depakote, plaintiff "still has some anger and aggressive feelings, and his anger snowballs." (Tr. 400). According to plaintiff, this directly contradicts the ALJ's assertion that "the record suggests that when compliant with his treatment, which includes psychiatric medications and therapy, it is relatively effective in controlling his symptoms," and that "treatment records revealed that when the claimant was compliant with the prescription Depakote he was mentally stable." (Tr. 24-25) (internal quotation marks omitted).

Plaintiff also argues that the ALJ erred in giving the opinion of Dr. Lenhart minimal weight on the ground that it "is based on a one-time evaluation of the claimant." (Tr. 25). The record reveals that Dr. Lenhart evaluated plaintiff a minimum of two times. (Tr. 400, 402). Plaintiff also says that the State Agency Consultative Examiner (CE) also made significant findings. (Tr. 384-387). Dr. Brady determined plaintiff had a poor ability to relate and interact with others and his aggressive nature would likely affect his interpersonal relationships in the workplace. Dr. Brady determined that plaintiff's ability to maintain concentration was impaired and his ability to withstand normal stressors in the workplace was poor. (Tr. 387). By failing to acknowledge and provide explanation regarding these records, plaintiff contends that the hypothetical and RFC are incomplete, and it is unclear how the evidence supports the RFC under SSR 96-8p, especially since the decision essentially rejected every medical opinion regarding plaintiff's mental

health.  Additional limitations supported by the records include substantial difficulties regarding social interactions, anger, concentration deficiencies, and an inability to handle routine work stress, all of which require additional functional limitations that were not incorporated into the RFC.  Plaintiff maintains that the lack of the discussion of plaintiff's mental health treatment, records, and limitations does not comply with Social Security's rule and regulations, constituting reversible error.

In the instant case, both the medical record (Tr. 348-350, 372, 378, 384-387, 389, 400, 401-402) and the ALJ's decision reveal that the claimant suffers from a "severe" impairment of left index amputated finger. The ALJ expressly found left index amputated finger to be a "severe" impairment at step two.  (Tr. 18).  Yet, plaintiff points out that she never again discussed it as part of her analysis or incorporated it into the claimant's RFC or hypothetical questions to the VE.  By fashioning the RFC to state, "The claimant can perform gross and fine manipulation with the left upper extremity on a frequent basis" (Tr. 21), the ALJ erred in failing to include the plaintiff's severe limitations in his ability to perform pushing, pulling, grasping, and fine manipulation bilaterally, due to his amputation.  Plaintiff points out that he repeatedly testified at the hearing and made numerous statements throughout the record indicating that his amputated left index finger has more than a minimal effect on his ability to do basic work

activities.  Specifically, when asked by the ALJ about restrictions because of the left hand, he testified that he did not lift or carry things with it, that it was hard to grip anything for a period of time, and that it was difficult and painful to get dressed in the morning, especially when it comes to fastening buttons.  (Tr. 53).  He also testified that he could not take a gallon of milk out of the refrigerator with his left hand and that he has to shower and shave with his right hand.  (Tr. 61-62).  Finally, he also testified that he could no longer engage in any hobbies that he used to have.  (Tr. 55, 62).  According to plaintiff, it is internally inconsistent to find a "severe" upper extremity limitation and fashion an RFC of "frequent" use which is two-thirds of an eight hour work day.  SSR 83-10.  Plaintiff contends that it is clear from the evidence in the record that a reduction to "frequent" is not an adequate limitation.  According to plaintiff, the ALJ should have provided a viable explanation that articulates why more restrictive use of the upper extremities was not included in the RFC.  The failure to formulate an RFC which accurately portrays all of a claimant's impairments is a violation of Social Security rules and regulations, warranting remand.  Plaintiff asserts that the decision rejected every medical opinion available and failed to explain how the medical evidence supported the RFC.  Therefore, plaintiff requests a remand for further proceedings.

Plaintiff also contends that the ALJ did not properly address his obesity. Plaintiff's medical records indicate a BMI range of 40 to 44.9, and several records

document plaintiff's obesity (e.g., Tr. 353, 367, 373, 375, 378, 385, 400, 401, 426).  One record in particular described plaintiff's health condition as "very obese." (Tr. 375).  Further, evidence in the record documents plaintiff's difficulties during activities of daily living such as walking, doing the dishes and walking up stairs.  (Tr. 55-56).  In fact, during a physical consultative exam in August of 2010, and while testifying at the hearing, plaintiff noted that at times he required the use of a cane.  (Tr. 62, 378).  According to plaintiff, this evidence clearly demonstrates the severity of his impairment, and indicates the difficulty he would have with even minimal physical exertion.

Additionally, the decision indicates that plaintiff's arthritis of the left knee and back pain significantly limit plaintiff's functioning.  (Tr. 18).  Due to the increased effect that obesity may have on plaintiff's musculoskeletal conditions, as addressed in SSR 02-1p, plaintiff argues that the ALJ should have discussed plaintiff's obesity and its effect on plaintiff's functional limitations.  Although the ALJ did find obesity to be a severe impairment, a complete reading of the decision shows that obesity was only mentioned in passing.  Specifically, decision stated, "in terms of physical limitations, the undersigned found some limitation in physical function due to obesity." (Tr. 24).  However, no specificity was offered as to what these limitations were, or their relationship to the claimant's medical issues.  Due to the lack of specificity regarding this impairment, plaintiff contends

that it is impossible to determine how his obesity factored in to the RFC, if at all.

Instead, it appears that the ALJ either discredited or discounted plaintiff's back and knee pain allegations because he was obese, rather than assess whether his obesity exacerbated these problems. To this point, the ALJ seems to have recognized the interrelated nature of plaintiff's back and leg problems with his obesity, but did not properly consider the limiting effects of these impairments when combined. In other words, it appears that the ALJ considered plaintiff's limitations not as they existed as a matter of fact, but rather from a hypothetical position of what plaintiff's limitations would be if he lost weight. The ALJ expressly tied her finding that plaintiff was not disabled to his failure to follow prescribed treatment (i.e. lose weight). (Tr. 22-24). Indeed, the ALJ observed "the claimant's doctor told him to increase his exercise, modify his diet to lose weight, do strengthening exercises, and participate in physical therapy." (Tr. 23). Moreover, the ALJ found that plaintiff had "not been entirely compliant with his treatment recommendations," specifically noting that his "physicians recommended he participate in a diet and weight loss program." (Tr. 24). Thus, it appears that the only way obesity was considered at all in the decision, was to inappropriately use plaintiff's weight as an unjustified attack on his credibility. According to plaintiff, it is clear from the decision that the ALJ did not consider his obesity. Since the decision failed to comply with SSR 02-1p, plaintiff

contends that a remand is warranted.

      C.    <u>The Commissioner's Motion for Summary Judgment</u>

      According to the Commissioner, substantial evidence supports the ALJ's finding that plaintiff was not disabled because he retained the ability to perform light work subject to the numerous additional restrictions enumerated above. And given the vocational expert's unrebutted testimony that a significant number of jobs exist that a person with plaintiff's vocational background and RFC could perform, the Commissioner contends that substantial evidence supports the ALJ's ultimate finding that plaintiff was not disabled.

      The Commissioner also argues that the ALJ's RFC finding accounted for the limiting effects of plaintiff's impairments. The restriction to light work, which the ALJ made subject to numerous postural restrictions, a sit/stand option, and other limitations, accounted for plaintiff's arthritis, back pain, and obesity. The restriction to no more than occasional pushing/pulling with the left upper and lower extremities accounted for plaintiff's leg pain and arthritis as well as the pain he reported in his left hand and wrist. The restriction to no more than frequent gross and fine manipulation with the left upper extremity also accounted for this pain, as well as for any reduction in dexterity from the amputation of plaintiff's left index finger. The environmental restrictions the ALJ imposed accounted for plaintiff's testimony that cold aggravated his pain, and also addressed any

limitation in mobility on account of plaintiff's pain and weight. Lastly, the ALJ recognized that plaintiff's bipolar disorder resulted in certain mental limitations. The ALJ addressed them by restricting plaintiff to only simple, non-production pace work and to work that did not involve being in close proximity to co-workers and in direct contact with the public. This latter restriction addressed plaintiff's testimony that he had trouble interacting with other people.

According to the Commissioner, these restrictions are consistent with the findings of Drs. Nelson and DeLoach. The ALJ's restricting plaintiff to simple, non-production work that required no teamwork or direct contact with the public is consistent with Dr. DeLoach's conclusion that plaintiff could work in simple and repetitive tasks but would likely need to work alone or in a job which required no to minimal contact with the public. As for plaintiff's physical impairments, Dr. Nelson indicated that plaintiff could lift and carry up to 20 pounds occasionally and 10 pounds frequently. (Tr. 87). That restriction corresponds to the regulatory definition of light work. *See* 20 C.F.R. § 404.1567(b). According to the Commissioner, the ALJ largely adopted Dr. Nelson's recommended postural and environmental restrictions. In fact, the ALJ imposed more restrictions than Dr. Nelson suggested. For example, Dr. Nelson determined that plaintiff had no pushing/pulling restrictions. The ALJ, on the other hand, restricted plaintiff to no more than occasional pushing/pulling with the left upper and lower extremities.

And while Dr. Nelson imposed no restrictions on plaintiff's ability to perform gross manipulation with either hand, the ALJ restricted him to no more than frequent gross manipulation with the left hand.  The ALJ cited other evidence that supported her RFC finding.  She noted, for example, that despite his impairments, plaintiff participated in a wide array of daily activities.  Citing a function report that plaintiff submitted, the ALJ noted that plaintiff prepared simple meals, attended to his own personal care, mowed the lawn, and shopped in stores.  (Tr. 20, citing Tr. 226-33).  Indeed, plaintiff testified that "for the most part of my personal care, I'm fairly capable of taking care of."  (Tr. 62).  The ALJ also accurately noted that despite plaintiff's allegations of social isolation and difficulty getting along with others, he reported having a good relationship with his ex-girlfriend and his daughter.  (Tr. 20, 49).  Regarding plaintiff's ability to concentrate, the ALJ noted that plaintiff reported being able to watch movies, play cards on a computer, drive a car, and handle his finances.  (Tr. 20, 229-30).

The Commissioner also points out that the evidence on which the ALJ relied included medical findings.  While the ALJ acknowledged that in May 2009 plaintiff was psychiatrically hospitalized, she noted that binge drinking excessive amounts of liquor led to that hospitalization.  (Tr. 22).  In fact, at discharge a doctor assigned him a Global Assessment of Functioning (GAF) score of 70.  (Tr. 22, 349).  The GAF Scale reports a clinician's judgment of an individual's overall

level of functioning, and is used in planning, measuring the impact, and predicting the outcome of treatment. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000) (DSM IV-TR).  GAF scores from 61-70 indicate only some mild symptoms.  *Id*.  And significantly, plaintiff testified that he stopped abusing alcohol and cocaine.  (Tr. 51-52).  The ALJ further noted that according to a treatment note from April 2010, plaintiff was compliant with his medication and "mentally stable."  (Tr. 22, 374).  In fact, as the ALJ noted, exacerbation of plaintiff's symptoms corresponded to periods when plaintiff did not take his medicine.  (Tr. 22-23, 403-05).  His mental state improved with the administration of medication.  (Tr. 405).

The ALJ also cited the findings of a consultative examination conducted by Michael Brady, Ph.D. in September 2010.  (Tr. 22, 384-88).  As the ALJ noted, Dr. Brady confirmed that plaintiff had difficulty getting along with others.  (Tr. 22, 387).  And, the Commissioner contends that the ALJ accounted for that in the RFC.  Dr. Brady also noted that plaintiff was "able to understand, recall, and complete tasks and expectations with no major limitations."  (Tr. 22, 387).  The Commissioner maintains that this supports the ALJ's finding that plaintiff retained the mental capacity for unskilled work.

Regarding plaintiff's physical impairments, the ALJ correctly noted both the scant documentation of corroborating objective medical evidence as well as the

largely conservative nature of his treatment, which consisted mainly of

medication, pain injections, and physical therapy.  (Tr. 24).  She also noted that

while plaintiff had surgery on his knee and index finger, he declined orthopedic

surgery.  (Tr. 23).  She also cited plaintiff's hearing testimony that medical

marijuana reduced his pain by half.  (Tr. 24, 56-57).  The ALJ also noted that at

physical examination in July 2011, straight leg raise testing was negative and

plaintiff displayed good musculoskeletal range of motion.  (Tr. 23, 422).  Despite

plaintiff's pain complaints, X-rays of the shoulder and neck were negative.  (Tr.

422).  The ALJ also cited findings from a consultative physical examination

conducted by R. Scott Lazzara, M.D.  (Tr. 23, 378-82).  Dr. Lazzara found no

evidence of joint laxity, crepitance, or effusion.  (Tr. 379).  Grip strength was

intact.  (Tr. 379).  Although dexterity was "mildly impaired" in the left hand, Dr.

Lazzara noted that plaintiff could button clothing and open a door.  (Tr. 379).

Plaintiff had no difficulty getting on and off the examination table, no difficulty

heel and toe walking, mild difficulty squatting, and no difficulty hopping on the

right (but not the left).  (Tr. 379).  Range of motion testing was largely normal.

(Tr. 379-81).  Neurological testing was normal.  (Tr. 381).  Plaintiff walked with a

normal gait without the use of an assistive device.  (Tr. 381).

  Plaintiff raises several arguments against this evidence and findings.

Regarding his mental functioning, plaintiff argues that the ALJ did not give

Report and Recommendation
Cross-Motions for Summary Judgment
*Mitchell v. Comm'r*; Case No. 13-11138

sufficient weight to Dr. Brady's opinions, as well as those from H. Lenhart, M.D. Plaintiff notes that Dr. Brady found that Plaintiff's poor ability to relate and interact with others and his aggressive nature would likely affect his interpersonal relationships in the workplace; he also notes that Dr. Brady found plaintiff had impaired concentration and poor ability to withstand stressors in the workplace. *Id*. at 6. While Dr. Brady opined that plaintiff had poor ability to withstand workplace stressors, the ALJ gave only "some" weight to Dr. Brady's opinion. (Tr. 25). According to the Commissioner, medical opinions of non-treating sources such as Dr. Brady are accorded weight in proportion to the extent they are supported by medically acceptable clinical and laboratory diagnostic techniques and are consistent with other substantial evidence. 20 C.F.R. § 404.1527(d)(3),(4). The Commissioner contends that the ALJ evaluated Dr. Brady's opinions consistently with this standard. To the extent they were supported by such findings and consistent with the record, she accepted them and accounted for them by restricting plaintiff to simple non-production pace work that did not require direct contact with the public or work in close proximity with co-workers. But the Commissioner maintains that the ALJ properly rejected Dr. Brady's other opinions, including his belief that plaintiff had poor ability to withstand workplace stressors or insufficient ability to maintain concentration in the workplace. She explained that the record evidence, including plaintiff's

symptoms and robust daily activities, did not support them.  (Tr. 25).  According to the Commissioner, plaintiff overlooks such evidence as well as Dr. DeLoach's finding that plaintiff's mental impairments and symptoms did not preclude the performance of simple unskilled work on a sustained basis.  (Tr. 90-91).

Plaintiff also complains that the ALJ gave too little weight to Dr. Lenhart's opinions on the mistaken belief that Dr. Lenhart saw plaintiff only one time.  The Commissioner acknowledges that plaintiff is correct that the ALJ mistakenly indicated that plaintiff saw Dr. Lenhart only once.  (Tr. 25).  The record documents two visits, one in June 2011 (Tr. 401-02), and one in July 2011.  (Tr. 400).  The Commissioner asserts that the ALJ's error was harmless, as the ALJ had no obligation to give Dr. Lenhart's opinions greater weight on account of one additional visit.  First, to the extent that plaintiff implies that Dr. Lenhart deserved the deference due a treating physician, he does not.  The rationale for giving greatest deference to a treating physician opinion does not hold for Dr. Lenhart, who saw plaintiff only twice in two consecutive months.  *See e.g.*, *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) ( "Dr. Ruff examined Mr. Barker on only one occasion, and the rationale of the treating physician doctrine simply does not apply here.").  Second, the ALJ provided another reason for discounting Dr. Lenhart's opinions: they were inconsistent with the record as a whole.  (Tr. 25).  Plaintiff does not address this other reason.

As for his physical impairments, plaintiff takes issue with two aspects of the ALJ's decision. He first claims that the ALJ did not adequately account for the functional deficits arising from his amputated left index finger. He asserts that the restriction to frequent gross and fine manipulation was insufficient. For this point, plaintiff relies heavily on his hearing testimony, where he reported that he had trouble gripping things, dressing in the morning, and lifting a gallon of milk. According to the Commissioner, plaintiff forgets that the ALJ did not fully credit this testimony. (Tr. 22, 24). The Commissioner contends that plaintiff does not raise any argument against the ALJ's credibility finding, and so has waived any now. *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477 (6th Cir. 2006) ("[W]e limit our consideration to the particular points that Hollon appears to raise in her brief on appeal.").

Waiver aside, the Commissioner also asserts that plaintiff's argument overlooks other evidence that supports the ALJ's finding, including his own testimony that while it was "hard to do buttons," he was able to "manage." (Tr. 53), and his statement that "for the most part of my personal care, I'm fairly capable of taking care of." (Tr. 62). Similarly, plaintiff overlooks Dr. Lazzara's finding of no evidence of joint laxity, crepitance, or effusion; intact grip strength; and only "mildly impaired" dexterity in the left hand. (Tr. 379). In fact, Dr. Lazzara noted that plaintiff could button clothing. (Tr. 379). Nor does plaintiff

Report and Recommendation
Cross-Motions for Summary Judgment
*Mitchell v. Comm'r*; Case No. 13-11138

acknowledge that the amputated finger was on his left, non-dominant hand and that his right hand remained fully functional.  And of course plaintiff makes no mention of Dr. Nelson's opinion that plaintiff retained the capacity to perform frequent fingering (fine manipulation) with the left hand but had no other limitations in his ability to finger, feel, or handle objects.  (Tr. 88).  Plaintiff cites no medical opinions that contradict Drs. Lazzara's and Nelson's findings.  No other medical source imposed any greater restrictions on the use of plaintiff's left hand or arm.  The Commissioner also points out that plaintiff's own work history bears out Drs. Lazzara's and Nelson's findings.  First, plaintiff lost his finger in 2004 (Tr. 85), which predates his claimed disability onset date of April 30, 2010.  (Tr. 16, 181-87, 188-91).  This suggests that even plaintiff himself did not believe the loss of his finger was disabling.  In fact, plaintiff worked as a painter as recently as March and April 2011.  (Tr. 39-40).  He testified that had to stop working after only two months on account of back, neck, and knee pain, but he never attributed any problem performing this work to his missing finger.  Thus, the Commissioner contends that the ALJ sufficiently accounted for plaintiff's amputated left finger.

Plaintiff also claims that the ALJ did not sufficiently consider the impact of his obesity.  He suggests that the ALJ hardly made mention of it, let alone consider how it affected his functional capacity.  Yet, according to the Commissioner, the

ALJ's consideration of plaintiff's obesity became manifest as early as at the

hearing.  The ALJ explicitly asked plaintiff whether he attributed any functional

limitation to his weight; plaintiff replied that he could not.  (Tr. 55-56).  And the

Commissioner contends that a plain reading of the ALJ's decision easily refutes

plaintiff's claim.  The ALJ began her analysis by finding obesity among plaintiff's

severe impairments at step two of the disability analysis.  (Tr. 18).  She again

mentioned obesity at step three, where she explained:

> There are no Listings in Appendix 1 specific to the
> evaluation of obesity. Section 1.00Q states that obesity
> will be considered during the disability determination,
> individually and in combination with other impairments
> (SSR 02-1p). The claimant's obesity is not such that it
> prevents the claimant from ambulating effectively
> pursuant to Listing 1.04.

(Tr. 19).  In the section of her decision in which she explained the evidentiary

basis for her RFC finding, the ALJ noted that doctors recommended that plaintiff

exercise and lose weight.  (Tr. 23, citing Tr. 422-23).  She also cited Dr. Lazzara's

finding that plaintiff had mild difficulty squatting "due to body habitus," but did

not require the use of an assistive device and had a stable gait.  (Tr. 23, citing Tr.

381).  She noted that Dr. Lazzara also recommended weight loss.  *Id*.  Noting

plaintiff's height of 71 inches and weight of 313 pounds, the ALJ went on to

explain, "Moreover, it appears as though some of the claimant's medical issues

centers [sic] on his obesity."  (Tr. 24).  She described plaintiff as "very obese."

(Tr. 24, citing Tr. 375).  In the same paragraph, the ALJ explained that despite his

weight, clinicians observed that plaintiff could ambulate without an assistive

device and retained a functional range of motion.  (Tr. 24, citing Tr. 421-22).

After noting that plaintiff could perform a wide array of activities of daily living

and self-care, the ALJ concluded:  "Finally, in terms of physical limitations, the

undersigned found some limitation in physical function due to obesity; however,

the evidence did not support the limitation alleged by the claimant."  (Tr. 24).  The

ALJ then explained the several bases on which she predicated her credibility

finding (Tr. 24-25). According to the Commissioner, this is more than a mere

"passing mention" of obesity.

      The Commissioner also points out that neither the regulations nor the Sixth

Circuit imposes any particular means of analyzing the effects of obesity.  *See*

*Bledsoe v. Barnhart*, 165 Fed.Appx. 408, 412 (6th Cir. 2006) ("It is a

mischaracterization to suggest that Social Security Ruling 02-01p offers any

particular procedural mode of analysis for obese disability claimants.").  The Sixth

Circuit is satisfied that an ALJ considered a claimant's obesity if, for example, the

ALJ explicitly mentioned the claimant's obesity in his finding of facts or if the

ALJ relied on evidence, such as an expert or doctor report, that considered it.  *See*

*id*.  Here, the ALJ did both.  The ALJ expressly found obesity among plaintiff's

severe impairments, and noted his height and weight.  She also cited and relied on

medical records and opinions, such as Drs. Nelson's and Lazzara's reports, that

made explicit note of plaintiff's weight or obesity.  According to the

Commissioner, the ALJ's reliance on this evidence is sufficient.  *See Coldiron v.*

*Comm'r of Soc. Sec.*, 2010 WL 3199693, at *7 (6th Cir. 2010), citing *Skarbek v.*

*Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) ("Every medical opinion that the ALJ

evaluated acknowledged Coldiron's obesity.  Thus, by utilizing the opinions of

these physicians in fashioning Coldiron's RFC, the ALJ incorporated the effect

that obesity has on the claimant's ability to work into the RFC he constructed.").

Thus, the Commissioner maintains that the ALJ fully considered plaintiff's obesity

and substantial evidence supports his RFC finding as well as his ultimate finding

that plaintiff was not disabled.

>    D.    Plaintiff's Reply

The issue is whether the ALJ properly evaluated and determined a complete

RFC, and provided evidentiary support for the RFC under SSR 96-8p.  While the

Commissioner argues that the ALJ decision properly evaluated and summarized

the evidence in the record before formulating the RFC, plaintiff maintains that the

Commissioner's argument fails to address plaintiff's claims, and engages in an

impermissible post hoc analysis.  However, in making the argument that the ALJ's

decision adequately addresses plaintiff's mental health, plaintiff contends that the

Commissioner points to the few mental health records that were mentioned in the

record, which only mention positive reports.  According to plaintiff, he previously

outlined the many records in plaintiff's file that were never discussed in the

decision and contradict the ALJ's findings.  The Commissioner argues that the

ALJ's failure to acknowledge plaintiff's multiple mental health records

documenting limiting symptoms, as plaintiff outlines in his initial brief, was not a

failure, because the ALJ mentioned a few select records that showed "his

mental state improved with the administration of medication."  However,

according to plaintiff, nowhere does the Commissioner explain how such a brief

mentioning of only a few medical records constitutes discussion, analysis, and

evidentiary support.  Even if the ALJ did provide a complete evidentiary summary,

"A fact summary, no matter how detailed, is not analysis. The latter is what is

critical."  *Kerr v. Comm'r of Soc. Sec.*, 2013 WL 388987 at *10 (E.D. Mich. Jan.

10, 2013) (report and recommendation), adopted 2013 WL 388176 (E.D. Mich.

2013).  Where an ALJ fails to link the evidence to the ultimate RFC, remand is

appropriate.  As the Court in *Meyer v. Comm'r found*, "An ALJ ... must articulate,

at some minimum level, his analysis of the evidence to allow the appellate court to

trace the path of his reasoning." *Meyer v. Comm'r*, 2011 WL 3440152, at *9 (E.D.

Mich. 2011), quoting *Lowery v. Comm'r*, 55 Fed.Appx. 333, 339 (6th Cir. 2003).

   Plaintiff argues that the same is true with regard to his pain and amputated

left index finger.  Although the ALJ did recite evidence of record, plaintiff asserts

that she did not provide a narrative discussion as required by SSR 96-8p

explaining how the evidence signified plaintiff's ability to perform light work with

the ability to occasionally push/pull with the left upper and lower extremities, or

perform frequent gross and fine manipulation with the left upper extremity.  Even

if the ALJ's summary was thorough, which is not so in plaintiff's case, the ALJ

failed to bridge the gap between the fact summary of the evidence of record and

the RFC determination.  According to plaintiff, there is no explanation of the

nexus between the two.

Additionally, plaintiff contends that the Commissioner engages in a post

hoc analysis, offering medical evidence and reasoning that could possibly support

the ALJ according to the Commissioner.  The Supreme Court of the United States

has found that it is impermissible for federal courts to reach beyond the findings of

an administrative body by utilizing post-hoc rationalization to justify the

reviewing court's ruling.  *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).  By

conducting the post hoc analysis, the Commissioner reveals the flaws in the ALJ's

decision, as the supplementation is necessary due to the lack of explanation and

analysis offered in the decision.

Plaintiff also contends that the ALJ's treatment of Dr. Lenhart's opinion

was not harmless error.  As plaintiff explained in his initial brief, plaintiff treated

with Dr. Lenhart twice: once in June of 2011 and once in July of 2011.  (Tr. 400,

402).  However, the ALJ indicated that plaintiff saw Dr. Lenhart only one time,
and erroneously concluded that Dr. Lenhart's opinion was "based on a one-time
evaluation of the claimant."  (Tr. 25).  While the acknowledgment that plaintiff
treated with Dr. Lenhart twice instead of once does not afford Dr. Lenhart's
opinion the heightened analysis required by the Treating Source Rule, plaintiff
contends that it would negate the ALJ's only reason for failing to afford Dr.
Lenhart's opinion more weight.  The ALJ analyzed Dr. Lenhart's opinion from the
mistaken perspective of a one-time evaluator, rather than the psychiatrist with
whom he was building a treating relationship when the opinion was issued.
Ultimately, then, plaintiff contends that the ALJ's analysis is flawed and not
supported by substantial evidence.

    Plaintiff acknowledges that while it is certainly true that obesity is no longer
its own listing and that SSR 02-1p does not provide a particular procedural mode
of analysis, there is a definite difference between mode of analysis and absence of
analysis altogether.  Plaintiff contends that a simple factual finding that plaintiff is
obese is no analysis at all.  Moreover, as plaintiff pointed out in his initial brief, it
is clear in the Sixth Circuit that this regulation provides a basic framework for
obesity and that some consideration is necessary to avoid a remand. Again, the
Commissioner attempts to supplement the ALJ's decision with post hoc arguments
as to how plaintiff's obesity was analyzed.  According to plaintiff, this post hoc

analysis is revealing of the lack of consideration given to plaintiff's obesity in the ALJ's decision, and indicates grounds for remand under Sentence Four. *SEC v. Chenery Corp.*, 332 U.S. at 196.

### III.   DISCUSSION

A.   <u>Standard of Review</u>

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case

de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.

McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,

387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to

evaluate the credibility of witnesses, including that of the claimant."  *Rogers v.

Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.

Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may ... consider the credibility of a claimant

when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502

F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the

claimant are to be given great weight, particularly since the ALJ is charged with

observing the claimant's demeanor and credibility.") (quotation marks omitted);

*Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is

appropriate where an ALJ finds contradictions among medical reports, claimant's

testimony, and other evidence.").  "However, the ALJ is not free to make

credibility determinations based solely upon an 'intangible or intuitive notion

about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec.

Rul. 96-7p, 1996 WL 374186, *4.

　　　　If supported by substantial evidence, the Commissioner's findings of fact

are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that

either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.    <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.

> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without
> further analysis.

> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.

> Step Four:  If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.

> Step Five: Even if the claimant is unable to perform his
> or her past relevant work, if other work exists in the
> national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Report and Recommendation
Cross-Motions for Summary Judgment
*Mitchell v. Comm'r*; Case No. 13-11138

C.    <u>Analysis and Conclusion</u>

    1.    Obesity

Obesity, by itself, does not constitute a disability and is not qualified as a

"listed impairment."  SSR 02-1p, 2000 WL 628049, at *1.  "Social Security Ruling

02-01p does not mandate a particular mode of analysis.  It only states that obesity,

in combination with other impairments, 'may' increase the severity of the other

limitations."  *See Bledsoe v. Barnhart*, 165 Fed. Appx. 408, 411-12 (6th Cir.

2008).  Accordingly, the Sixth Circuit has held compliance with SSR 02-1p only

requires demonstration that the ALJ "considered" obesity.  *See id.* ("It is a

mischaracterization to suggest that Social Security Ruling 02-01p offers any

particular procedural mode of analysis for obese disability claimants.").  Further,

the administrative findings need not contain an explicit reference to the claimant's

obesity if the decision as a whole appears to have adopted limitations resulting

from the condition.  *Coldiron v. Comm'r of Soc. Sec.*, 2010 WL 3199693, at *7

(6th Cir. 2010), citing *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004).

Here, as the Commissioner pointed out, the ALJ expressly considered plaintiff's

weight in her decision.  No treating physician offered any opinion that plaintiff's

obesity caused any additional limitations and tellingly, plaintiff offers no evidence

that his obesity caused any additional functional limitations beyond those found by

the ALJ.  Accordingly, plaintiff's claim of error should be denied.

2.      Amputation

According to plaintiff, it is internally inconsistent to find a "severe" upper extremity limitation and fashion an RFC of "frequent" use which is two-thirds of an eight hour work day.  SSR 83-10.  Plaintiff contends that it is clear from the evidence in the record that a reduction to "frequent" is not an adequate limitation. According to plaintiff, the ALJ should have provided a viable explanation that articulates why more restrictive use of the upper extremities was not included in the RFC.  While plaintiff testified to some limitations in his ability to use his left upper extremity, as the Commissioner points out, the ALJ found plaintiff to be not fully credible.  However, the ALJ's written decision is entirely lacking on analysis on this point.  The undersigned notes that "the courts may not accept appellate counsel's post hoc rationalizations for agency action.  It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Berryhill v. Shalala*, 4 F.3d 993, 1993 WL 361792, *6 (6th Cir. 1993) (unpublished opinion), *quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983) (citation omitted).  "Courts are not at liberty to speculate on the basis of an administrative agency's order ... The court is not free to accept 'appellate counsel's post hoc rationalization for agency action in lieu of reasons and findings enunciated by the Board.'" *Hyatt Corp. v. N.L.R.B.*, 929 F.2d 361, 367 (6th Cir. 1991).  While the Commissioner points to a variety of

evidence in the record to support the ALJ's RFC in this regard, it is clear that the ALJ's decision does not bridge the logical gap from this evidence to the conclusions reached in the RFC.  While the ALJ mentions plaintiff's claims regarding limitations due to his hand, she never specifically discussed why she reached the conclusion she did as to his upper extremity limitations, including any medical evidence that would support her conclusion.  Thus, a remand is necessary so that the ALJ can fully explain how she reached her conclusion regarding plaintiff's upper extremity limitations.

3.     Mental Impairment

In the view of the undersigned, the ALJ carefully examined and discussed all the evidence regarding plaintiff's mental impairments and accounted for those impairments supported by the record in the RFC.  Contrary to plaintiff's contention, the ALJ did include a logical bridge from the summary of medical evidence (which was extensive and included a discussion of plaintiff's hospitalizations) and consideration of all the medical opinions in the record.  In particular, plaintiff complains that the ALJ did not fully accept the opinions of Dr. Brady (the consulting examiner).  Dr. Brady concluded that plaintiff's ability to relate to and interact with others, including coworkers and supervisors, is poor. Dr. Brady also opined that plaintiff's aggressive nature will likely affect his interpersonal relationships in the workplace.  Dr. Brady found that plaintiff was

able to understand, recall, and complete tasks and expectations with no major limitations, except that his ability to maintain concentration is impaired and his ability to withstand the normal stressors associated with a workplace setting is poor. (Dkt. 9-7, Pg ID 421). While the ALJ only gave Dr. Brady's opinion "some weight", plaintiff does not explain how the ALJ did not accommodate these limitations into the RFC. The RFC concluded that plaintiff could only perform non-production pace work that is simple, unskilled, with an SVP level of 1 or 2, that he should not work in close proximity to coworkers, that he could not function as part of a team and should have no contact with the public. It seems quite clear that the deficits found by Dr. Brady were accommodated in the RFC and plaintiff does not provide any explanation suggesting otherwise.

Plaintiff also contends that the ALJ should have given more weight to Dr. Lenhart's opinions because he did not see plaintiff on a single occasion as stated in the ALJ's decision. However, plaintiff fails to provide any indication as to how that would have or should have changed the RFC. Dr. Lenhart provided no specific opinions regarding plaintiff's functional limitations. Thus, the undersigned fails to see how the consideration of Dr. Lenhart's two treatment records would have made any difference in the RFC as found by the ALJ. For these reasons, the undersigned finds no error in the ALJ's analysis of plaintiff's mental limitations.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED** in part and **DENIED** in part, that defendant's motion for summary judgment be **GRANTED** in part and **DENIED** in part, and that the findings of the Commissioner be **REVERSED** in part and **AFFIRMED** in part, and that this matter be **REMANDED** for further proceedings.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: February 11, 2014                         s/Michael Hluchaniuk
                                                Michael Hluchaniuk
                                                United States Magistrate Judge

## CERTIFICATE OF SERVICE

        I certify that on February 11, 2014, I electronically filed the foregoing paper
with the Clerk of the Court using the ECF system, which will send electronic
notification to the following: Jessica J. Brissette, Marc Boxerman, Susan K.
DeClercq and Commissioner of Social Security.

                                                s/Tammy Hallwood
                                                Case Manager
                                                (810) 341-7887
                                                tammy_hallwood@mied.uscourts.gov

Report and Recommendation
Cross-Motions for Summary Judgment
*Mitchell v. Comm'r*; Case No. 13-11138